UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES E. GEESEY,

    Plaintiff,

v.                                                                               Case No. 2:06-cv-133

COMMISSIONER OF SOCIAL SECURITY,                 HON. ROBERT HOLMES BELL

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff Charles E. Geesey filed an application for disability insurance benefits and supplemental security income benefits in 2000. That application for benefits was denied initially and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). The ALJ issued an unfavorable decision and Plaintiff then filed a request for a review with the Appeals Council. The request for review was denied on April 2, 2001. Plaintiff filed a second application for supplemental security income benefits with a protective filing date of January 29, 2002, alleging that he had been disabled since June 26, 1996. The earlier decision denying Plaintiff's claim for benefits is entitled to *res judicata* and precludes a claim for disability benefits any earlier than April of 2001. Plaintiff's current claim for benefits was denied on October 4, 2002. Thereafter, Plaintiff requested a hearing on November 5, 2002. The hearing was held in Marquette, Michigan, on October 26, 2004, before ALJ Robert L. Bartelt, Jr. Testifying at the hearing were Plaintiff and a vocational expert, David Ostwald. On January 24, 2005, the ALJ issued a decision denying Plaintiff's request for disability

benefits. The ALJ found that Plaintiff had not worked since at least January of 2002, and that the medical evidence established that Plaintiff suffered from:

> [S]tatus post right carpal tunnel release, some degree of ulnar neuropathy, complaints of back and neck pain of undetermined etiology, mild chronic obstructive pulmonary disease related to chronic cigarette use, and a possible history of substance abuse, which according to claimant is currently in remission, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

Transcript of Administrative Proceedings at page 26 (hereinafter Tr. at ____). The ALJ went on to hold that Plaintiff did have some pain and limitations, but they were not as severe as he testified. The ALJ concluded that Plaintiff was unable to perform his past relevant work, but had the residual functional capacity to perform a full range of sedentary work and light work with some non-exertional limitations. The ALJ concluded that Plaintiff was a "younger" person with a high school degree. The ALJ relied upon the testimony of a vocational expert, which the ALJ concluded demonstrated "that while claimant may be precluded from his past work, there remains a significant number of jobs in the economy which he is still capable of performing." Tr. at 25-26. Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits. Thereafter, Plaintiff sought review with the Appeals Council on March 21, 2006. Plaintiff's request for a review of the ALJ's January 24, 2005, decision was denied. The ALJ's decision thus became the final decision of the Commissioner. Plaintiff then filed the instant action seeking an order from this Court reversing the decision of the Commissioner and awarding him supplement security income benefits.

When reviewing a denial of benefits, the Commissioner's factual findings are deemed conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Foster v. Halter*, 279

F.3d 348, 353 (6th Cir. 2001). Substantial evidence has been defined as more than a mere scintilla, but less than a preponderance of the evidence. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). This Court is not to review the decision of the Commissioner *de novo*, and must affirm that decision if it is supported by substantial evidence. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This Court must affirm the decision of the Commissioner, even if there is evidence in the record which could support a contrary holding.

In the present case, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence. In addition, Plaintiff maintains that he suffers from disabling pain and is not capable of performing light work. Plaintiff further maintains that the Commissioner's finding that Plaintiff's testimony was not fully credible is erroneous and that the ALJ wrongfully applied the vocational expert's testimony. Plaintiff also argues that the ALJ failed to give appropriate weight to the opinions of Plaintiff's treating physicians.

It is my recommendation that the Court conclude that there is substantial evidence to support the Commissioner's decision. The decision by ALJ Bartelt, Jr., was extremely well written and thoroughly analyzes the medical evidence of record. The ALJ's decision identifies Plaintiff's serious medical condition and concludes that Plaintiff is still capable of performing work which exists in the national economy. Nothing would be gained by repeating what is reflected in the ALJ's decision, which thoroughly examined the evidence of record. It is noteworthy that the ALJ identified conflicts in the record between what Plaintiff indicated he was capable of doing and what Plaintiff's father indicated Plaintiff was actually doing. *See* Tr. at 75-78, 93-98. There is ample support in the record for the ALJ's conclusion that Plaintiff's testimony was not fully credible and that many of Plaintiff's complaints were subjective.

Contrary to Plaintiff's assertions, the record does not necessitate a finding that the ALJ failed to give due weight to the opinions of Plaintiff's treating physicians. Plaintiff relies upon the July 2002 opinion of Dr. Sueldo, which indicated that Plaintiff was not capable of performing sedentary work. As the ALJ indicated, this opinion was not well supported by the medical evidence of record and was not consistent with other evidence in the record. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-31 (6th Cir. 1997). As the ALJ indicated:

> The treatment notes record both Dr. Gardner's and Dr. Sueldo's observations that claimant's hands were calloused and appeared to have grease on his fingers and hands, suggesting that he was doing some work (see entries as of June 25 and July 1, 2004 in Exhibit B-10F) with previous references as well to observations of claimant's hands being dirty (see entry as of June 16, 2003) and that claimant had been working in the woods cutting trees (see entry as of October 16, 2002). In fact, in an entry on October 16, 2002, claimant acknowledged that after being given OxyContin, he "was able to go back to work." At the hearing, claimant was extremely histrionic, holding his head at times when talking about his supposed constant headaches, bending over the back of his chair and placing the palms of his hands flat on his seat, pretending to be unable to manipulate or do anything with the right hand since the carpal tunnel surgery, which he claimed "went bad," even though progress notes from the physician suggest otherwise. When distracted or talking about something else, he did not engage in such behavior and was observed to sit comfortably, was able to move both hands and arms around in gesturing, manipulating papers and envelopes with his right hand without any difficulty and moving his fingers easily, as well as opening and closing them without any apparent discomfort. Claimant's assertions that the carpal tunnel surgery "went bad" is belied by the post surgical notes from Dr. Moede, which include the comment that claimant was "doing well" (see entry as of July 26, 2004 in Exhibit B-11F). Claimant also had professed in the past that physicians had recommended surgery for the back and neck, misstating to his physician that three neurosurgeons had "wanted to operate on him" for three supposed herniated discs in the neck and back, when exactly the opposite is true and that the specialists had specifically indicated that claimant was not a surgical candidate (compare entry as of January 19, 2004 in Exhibit B-11F with entry as

> of September 28, 2003 in Exhibit B-9F). MRI scans have shown no significant abnormalities with regard to the cervical and lumbar spine (see Exhibit B-1F and entry as of February 12, 2002 in Exhibit B-8F) and while an EMG-nerve conduction velocity study did show some degree of carpal tunnel syndrome for which claimant underwent right carpal tunnel release, as well as possible ulnar neuropathy, it specifically showed no evidence of any radiculopathy (Exhibit B-16F).
>
> * * *
>
> While Dr. Sueldo had offered a rather extreme estimate as to claimant's physical capacities in Exhibit B-3F, which he completed in April of 2002, that questionnaire is given little weight, as it is inconsistent with that physician's own contemporaneous progress notes, not to mention other treatment records. There has been no logical bridge built by that physician between the limitations cited in that exhibit and the findings, or rather, the lack thereof in the actual treatment records. That physical capacity in the exhibit is also inherently inconsistent, as evidenced by contradictions with regard to hand grip and dexterity. Probably the most detailed physical examination comes from the Social Security Administration's medical consultant, Dr. Lazzara, who as of August 16, 2002 found good grip strength and dexterity and little in the way of restrictions regarding range of motion, as well as no evidence of radiculopathy or neurological deficits.

Tr. at 24-25.

It is my recommendation that the Court conclude that the record contains substantial evidence to support the Commissioner's conclusion that Plaintiff did not qualify for benefits. Accordingly, it is recommended that the Court affirm the decision of the Commissioner.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                  /s/ Timothy P. Greeley  
                                                  TIMOTHY P. GREELEY  
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: August 21, 2007